**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| RICHARD AMAVISCA NINO,<br><br>                      Petitioner,<br><br>     vs.<br><br>KEN CLARK, Warden, et al.,<br><br>                      Respondents. | Civil No.       1:06cv0988 L (LSP)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.      INTRODUCTION**

Richard Amavisca Nino, a state prisoner proceeding pro se, has filed a Petition for a Writ of Habeas Corpus ("Petition" or "Pet.") in the United States District Court for the Eastern District of California challenging his Fresno County Superior Court conviction in case number 04CM7671 for attempted murder. (Clerk's Tr. at 077; Rep's Tr., vol. 1.)  Nino claims his Sixth Amendment rights as delineated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny were violated when the state court judge sentenced him to the aggravated prison term on the basis of facts not found by a jury beyond a reasonable doubt.

The Court has considered the Petition, Petitioner's Memorandum of Points and Authorities in Support of the Petition, Respondent's Answer and Memorandum of Points and Authorities in Support of the Answer, the Lodgments submitted by Respondent and all the

supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Petition is **DENIED.**

## II.     FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). Petitioner pleaded guilty to attempted murder, a violation of California Penal Code sections 664/187(a). The relevant facts as found by the state appellate court are as follows:

> On October 17, 2004 Richard Amavisca Nino (appellant) gave his wife, Rose, coffee laced with rat poison. Later in the day, Rose felt sharp pains in her stomach and awoke to an extreme headache. [footnote 1.] While working in the kitchen, Rose passed
>
> [footnote 1: The facts relied upon arise from the probation report, the preliminary hearing, and the sentencing hearing.]
>
> out and was moved into her bedroom by appellant and their daughter whereupon she knocked over her glass and noticed rat poison pellets at the bottom of her drink. Their daughter called paramedics, who called the King's County Sheriff's Department when the paramedics discovered the poison. Appellant was promptly arrested.

(Lodgment No. 4 at App.)

## III.    PROCEDURAL BACKGROUND

On November 10, 2004, the Kings County District Attorney filed an Information charging Richard Amavisca Nino with one count of attempted murder, a violation of California Penal Code ("Penal Code") sections 664/187, assault with a deadly weapon, a violation of Penal Code section 245(a)(1), elder abuse, a violation of Penal Code section 368(B)(1) and poisoning food, drink or medicine likely to be ingested by a person, a violation of Penal Code section 347(a)(1). (Clerk's Tr. at 033-34.) Pursuant to a negotiated plea agreement, Nino pleaded guilty to count one, attempted murder; the remaining counts were dismissed. (*Id.* at 037; Rep's Tr., vol. 1 at 6-11.) Nino was sentenced to the aggravated term of nine years in prison based on the state judge's findings under California Rules of

Court, Rule 4.421, that the victim was particularly vulnerable, the manner in which the crime was carried out indicated planning and sophistication and Nino took advantage of a position of trust with respect to the victim. (Clerk's Tr. at 077; Rep's Tr. vol. 2 at 58-59.)

Nino appealed his conviction to the California Court of Appeal for the Fifth Appellate District. (Lodgment Nos. 1, 2, 3.) That court affirmed his conviction and sentence in a written, unpublished opinion. (*See* Lodgment No. 4 at App.) Nino then filed a Petition for Review in the California Supreme Court challenging his conviction. (Lodgment No. 4.) The court denied the petition without citation of authority. (Lodgment No. 5.)

Nino filed a Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of California on June 29, 2006. (*See* Doc. No. 1.) Respondent filed an Answer on May 27, 2008. (*See* Doc. No. 20.) Nino did not file a Traverse. The matter was reassigned to this Court on November 25, 2008.

**IV.   DISCUSSION**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C. § 2254(a) (2006) (emphasis added). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2006) (emphasis added).

/ / /

"[The Anti Terrorism and Effective Death Penalty Act] establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F.3d 998, 1001 (9th Cir. 2007) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)). Because Nino's claims were adjudicated on the merits in state court, to obtain federal habeas relief, he must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). A state court, however, need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

    A. *Sixth Amendment Sentencing Claim*

Nino argues his Sixth Amendment rights were violated when the trial court sentenced him to the upper term on the basis of facts not found by a jury beyond a reasonable doubt in

violation of *Blakely v. Washington*, 542 U.S. 296 (2004).  (Pet. at 5; Pet'rs Mem. P. & A. at 1-9.)  Respondent urges that granting relief to Nino would violate *Teague v. Lane*, 489 U.S. 288 (1989).  (Answer at 7-13.)  Respondent also argues that if the Court does not find Nino's claim is barred by *Teague*, any claim Nino seeks to bring under *Cunningham v. California*, 549 U.S. 270 (2007), which applied *Apprendi* and *Blakely* to California's Determinate Sentencing Law ("DSL"), is unexhausted.  (*Id.* at 13-15.)  In the alternative, Respondent argues that the state court did not unreasonably apply *Apprendi* and *Blakely* to Nino's case and that any error which did occur was harmless.  (*Id.* at 15-18.)

   1.  *The Legal Landscape:  Apprendi, Blakely and Cunningham*

   In a series of cases beginning with *Apprendi*, the Supreme Court has delineated the scope of the Sixth Amendment's right to jury trial to proscribe sentences which rely on facts found by a judge not by a jury beyond a reasonable doubt.  In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  The Court struck down a ten-year "hate crime" enhancement in *Apprendi* which the judge imposed after finding that the defendant had committed the crime "with a purpose to intimidate . . .because of race, color, gender, handicap, religion, sexual orientation or ethnicity."  *Id.* at 468-69 (quoting N.J. Stat. Ann. § 2C:44-3(e)).  Four years later, the Court applied the principles of *Apprendi* in *Blakely* to strike down a Washington statute which permitted a judge to impose an aggravated sentence on a defendant if the judge concluded the defendant had acted with "deliberate cruelty."  *Blakely*, 542 U.S. at 303, 314.  The Court also defined the term "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  *Id.* at 303.  Then, in 2007, the Court concluded in *Cunningham* that California's sentencing system could not withstand scrutiny under the Sixth Amendment as defined by *Apprendi* and *Blakely*.  *Cunningham*, 549 U.S. at 293-94.  California prescribed three terms of imprisonment, an aggravated term, a mitigated term and a middle term, and permitted a judge to impose the aggravated term if he found certain

aggravating factors were present. *Id.* at 277.  The *Cunningham* court held that California's "statutory maximum" was the middle term of imprisonment and any fact which increased the sentence beyond that middle term had to be either found by a jury or admitted to by a defendant. *Id*. at 293.

       2.     *Teague v. Lane and Exhaustion*

Respondent asks this Court to deny Nino's petition because Nino's claim under *Cunningham* is barred by *Teague v. Lane*, 489 U.S. 288 (1989).  Under *Teague*, habeas relief is generally unavailable if it is based on a new procedural rule of constitutional law announced after a petitioner's conviction and sentence became final. *See Teague*, 489 U.S. at 389-90; *Caspari v. Bohlen*, 510 U.S. at 389.  There are two exceptions to non-retroactivity: (1) "rules forbidding punishment of certain primary conduct or . . . rules prohibiting a certain category of punishment for a class of defendants because of their status or offense; and (2) "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Beard v. Banks*, 542 U.S. 406, 416-17 (2004).  Respondent also argues that to the extent Nino's claim is based on the Supreme Court's ruling in *Cunningham* it is unexhausted because *Cunningham* represents a "intervening change in federal law that casts the legal issue in a fundamentally different light."  (Resp'ts Mem. P. & A. Supp. Answer at 13-14.)

The Ninth Circuit resolved both the *Teague* issue and the exhaustion issue against Respondent's position in *Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008).  Butler was sentenced to the aggravated term of imprisonment based on the trial judge's finding that the victim was vulnerable, the defendant attacked her from behind, and Butler was on probation at the time of the offense. *Butler*, 528 F.3d at 631.  On direct appeal, the California Court of Appeal found that Butler's sentence could not stand in light of *Blakely*. *Id.*  The California Supreme Court, relying on its then recent decision in *People v. Black*, 35 Cal. 4th 1328 (2005) ("*Black I*") which found California's DSL did not violate the Sixth Amendment as delineated in *Apprendi* and *Blakely*, vacated the court of appeal's decision and remanded the

matter to that court for reconsideration in light of *Black I*. *Id.* at 632.[1]

Butler filed a federal habeas corpus petition shortly before the United States Supreme Court decided *Cunningham*. The Attorney General argued, as in the present case, that Butler's claim was unexhausted because *Cunningham* had cast Butler's claim in a new light and, alternatively, that *Cunningham* had announced a "new rule" of constitutional law which could not be applied retroactively to Butlers' case. *Id.*; Resp'ts Mem. P. & A. Supp. Answer at 5-15.

The Ninth Circuit found that "the Supreme Court's Sixth Amendment case law at the time Butler's conviction became final compelled the conclusion that California's DSL was unconstitutional." *Butler*, 528 F.3d at 634. The Court held that "*Cunningham* thus did not announce a new rule of constitutional law and may be applied retroactively on collateral review." *Id.* at 639. The Court also concluded that the claim was exhausted:

> After *Teague*, an intervening change in federal law that casts the legal issue in a fundamentally different light is a "new rule" that cannot be applied on collateral review under any circumstances, regardless of whether the petitioner has exhausted his state court remedies. . . . Where there is no new rule announced, the state court had a fair chance to address the issue when it was raised, and there is no reason to require further exhaustion. We hold that when a petitioner raises a claim in state court that is later resolved in a case that announced no "new rule," a petitioner is not obligated to return to state court to exhaust his remedies under that case.

*Id.*

The Attorney General's arguments that relief is barred by *Teague* and that the claim is unexhausted are precluded by the Ninth Circuit's decision in *Butler*. The Court therefore rejects those arguments.

3.   *Unreasonable Application of Blakely*

Having concluded that Nino's claim is not barred by *Teague* and is exhausted, the Court must analyze the claim on the merits. Nino argues that the court improperly sentenced him to the aggravated term of nine years based on facts not found by a jury beyond a

---

[1] Unlike the petitioner in *Butler*, the California Supreme Court decided *Black I* before Nino appealed his case to the California Court of Appeal for the Fifth District, which concluded that *Black I* precluded relief.

reasonable doubt as required by *Apprendi* and its progeny. The state trial judge, acknowledging that *Blakely* might preclude him from doing so, found four aggravating factors: (1) the victim was particularly vulnerable; (2) the manner in which the crime was carried out indicated planning and sophistication; (3) Nino's subsequent attempts to explain away or deny the events; and (4) Nino took advantage of a position of trust. (Rep.'s Tr., vol. 2 at 54-63.)

Nino appealed his sentence to the California Court of Appeal for the Fifth Appellate District, which denied the claim in a written opinion. (Lodgment No. 4, Appx.) Nino thereafter filed a petition for review in the California Supreme Court, which denied it without citation of authority. (Lodgment No. 5.) This Court must therefore "look through" to the state appellate court's opinion as the basis for its analysis. *Ylst*, 501 U.S. at 801-06. That court cited *Black I* as the basis for its denial, stating that "[t]he California Supreme Court recently undertook an extensive analysis of [*Apprendi*, *Blakely* and *Booker*] and concluded that the imposition of an upper term sentence, as provided under California law, is constitutional. [citations omitted]." (Lodgment No. 4, Appx. at 2.)

Respondent argues that the state court's denial of Nino's claim was not an unreasonable application of Supreme Court law because *Apprendi*, *Blakely* and *Booker* did not clearly establish California's DSL violated the Sixth Amendment principles set forth in those cases. (Resp'ts Mem. P. & A. Supp. Answer at 15.) As support for this argument, Respondent notes that "three justices of the Supreme Court ultimately concluded that California's sentencing scheme was constitutional (Id.) *Butler*, however, squarely rejected this argument:

> The rule in *Black I* is nowhere to be found in Supreme Court precedent. Instead, it parallels the position of the *dissenters* in several of the Supreme Court's sentencing cases. *See Booker*, 543 U.S. at 235-36, 125 S.Ct. 738 (rejecting the dissent's reliance on the traditional authority of judges to engage in factfinding as to matters relevant to sentencing); *Apprendi*, 530 U.S. at 535, 120 S.Ct. 2348 (O'Connor, J., dissenting) (arguing that it is acceptable to allow judges to engage in factfinding as to matters that have traditionally been treated as affecting punishment rather than as elements); *accord Black I*, 35 Cal.4th at 1270, 29 Cal.Rptr.3d 740, 113 P.3d 534 (Kennard, J., concurring and dissenting) ("Nothing in the high court's majority opinions in *Apprendi*, *Blakely* and *Booker* suggests that the constitutionality of a state's sentencing scheme

> turns on whether, in the words of the majority here, it involves the type of factfinding that traditionally has been performed by a judge." (internal quotation marks omitted)).
>
> In fact, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303, 124 Sct. 2531. Rather than applying this bright-line rule, *Black I* applied a "traditional judicial factfinding" rule inconsistent with Supreme Court precedent. Its decision was therefore "contrary to" the clearly established law of the Supreme Court, and the requirements of AEDPA are met. *See Price v. Vincent*, 538 U.S. 634, 640, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (noting that a decision is contrary to clearly established law if it "applies a rule" that contradicts Supreme Court precedent).

*Butler*, 528 F.3d at 641.

Thus, for the reasons expressed in *Butler*, it is clear that the state court's denial of Nino's claim was contrary to clearly established Supreme Court law as expressed in *Blakely*. *Williams*, 529 U.S. at 412-13; *Butler*, 528 F.3d at 641.

    4.    *Constitutional Error and Harmlessness*

Having concluded the state court misapplied *Blakely*, the next step is for the Court to determine whether constitutional error occurred. *Butler*, 528 F.3d at 641. This requires a *de novo* analysis of whether the sentence imposed on Nino violated the Sixth Amendment. *Id*. Respondent argues no *Blakely* error occurred because Nino was advised, as part of his guilty plea, that he could be sentenced to a maximum of nine years. (Rep.'s Tr., vol 1 at 4.) Advising a defendant that he is subject to a particular sentence, however, does not remove the constitutional requirement, set forth in *Apprendi* and its progeny, that the facts necessary to support such a sentence must be found by a jury or be admitted by a defendant. *Blakely*, 542 U.S. at 303. The Court therefore rejects this argument.

Respondent also argues no *Blakely* error occurred because the state court relied on at least one properly found aggravating circumstance. (Resp'ts Mem. P. & A. Supp. Answer at 16; *see also Butler*, 528 F.3d at 641.) Specifically, Respondent notes that Nino stipulated to the preliminary hearing transcript as the factual basis for his plea and that the facts established at that hearing support the trial court's imposition of the aggravated term. (Resp'ts Mem. P. & A. Supp. Answer at 16; Clerk's Tr. at 0001-32; Rep's Tr. vol. 1 at 10.)

The Court agrees.

During the preliminary hearing, evidence was presented that the victim, Rose Marie, fell ill the morning of October 16, 2004 after drinking coffee provided to her by Nino. (Clerk's Tr. at 021.)  While drinking the coffee, she noticed it tasted bitter and felt that she had swallowed something solid. (*Id.*)  When she questioned Nino, he first told her it was a piece of a cookie then said it was a blood thinner. (*Id.*)  Rose Marie complained of stomach pains later in the day. (*Id.*)  The next day, Rose Marie awoke with a severe headache.  Nino again prepared a cup of coffee for her. (*Id.* at 022.)  This coffee was bitter as well. (*Id.*)  When Rose Marie's daughter Kathryn arrived later that day, Rose Marie told her she thought Nino was trying to poison her; Kathryn called 911. (*Id.*)  While Kathryn was awaiting medical personnel, she took the coffee cup away from Rose Marie and placed it on the floor.  When Kathryn's daughter Jasmine knocked the cup over, Kathryn saw a pellet in the bottom of the cup. (*Id.* at 014-15.)  She gave the pellet to the paramedics when they arrived. (*Id.*)

Officer Sweeney arrived at the residence along with medical personnel. (*Id.* at 006-07.)  Paramedics gave him the coffee cup with the pellet inside.  He asked Nino if there were any rat poison in the house and Nino directed him to a bottle of the poison. (*Id.* at 009.)  Sweeney compared the pellet from the cup to the pellets in the bottle and felt they were approximately the same shape and size.  The color was different, which the officer assumed was due to the pellet absorbing the coffee. (*Id.* at 008-10.)  No evidence was introduced that the pellet was in fact rat poison or that Rose Marie was suffering from poisoning. (*Id.* at 016-17, 028-29.)

The evidence presented at the preliminary hearing establishes Nino surreptitiously put rat poison into Rose Marie's coffee, intending to poison her, on two separate occasions.  This required sufficient planning to satisfy Rule 4.421(a)(8).  The Court also notes the facts presented at the hearing would support the trial court's finding that Nino took advantage of a position of trust, in that he was Rose Marie's husband and caretaker.  *See* Cal.R.Ct. 4.421(a)(11).  Nino stipulated to these facts. (Rep's Tr., vol. 1 at 10.)  Accordingly, no constitutional error occurred.  *See Butler*, 528 F.3d at 641.

1    Moreover, even if constitutional error did occur, it was harmless.  *See Washington v.*
2 *Recueno*, 548 U.S. 212 (2006) (holding that sentencing errors are subject to harmless error
3 analysis); *Butler*, 528 F.3d at 648-49.  Based on the facts presented at the preliminary
4 hearing, there is no doubt that a jury would have concluded beyond a reasonable doubt that
5 the facts of the crime showed a degree of planning (Cal.R.Ct. 4.421(a)(8)), that Rose Marie
6 was a vulnerable victim (Cal.R.Ct. 4.421(a)(3)), and that Nino had abused a position of trust
7 (Cal.R.Ct. 4.421(a)(11)).  Accordingly, and for all the foregoing reasons, Nino is not entitled
8 to relief as to his *Blakely* claim.

9    B.    *Sufficiency of the Evidence Presented at the Preliminary Hearing*

10   On pages four through six of his Memorandum of Points and Authorities in Support of
11 his Petition, Nino appears to argue that there was insufficient evidence presented at the
12 preliminary hearing to support the charges against him.  (Mem. P. & A. Supp. Pet. at 4-6.)
13 This claim is unexhausted.  (*See* Lodgment No. 4.)  A petitioner may not normally bring a
14 claim in federal habeas that has not first been exhausted by presenting it to the highest state
15 court having jurisdiction.  *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citing *Picard*
16 *v. Connor*, 404 U.S. 270, 275 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  The Court
17 may deny a habeas petition containing an unexhausted claim, however, if it is "perfectly clear
18 that the applicant does not raise even a colorable claim."  *Cassett v. Stewart*, 406 F.3d 614,
19 623-24 (9th Cir. 2005).

20   Because Nino pleaded guilty to the crimes of which he was convicted, he may not
21 challenge the sufficiency of the evidence presented at the preliminary hearing.  *Tollet v.*
22 *Henderson*, 411 U.S. 258 (1973).  As the Supreme Court stated:

> [A] guilty plea represents a break in the chain of events which has preceded in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

26 *Tollet*, 411 U.S. at 267.

27   Under *Tollet*, it is "perfectly clear that [Nino] does not raise even a colorable claim."
28 *Cassett*, 406 F.3d at 623-24.  Accordingly, Nino is not entitled to relief.

C.   *Involuntary Guilty Plea*

Nino also appears to allege that his guilty plea was involuntary. (Mem. of P. & A. Supp. Pet. at 6.) This claim is also unexhausted, but may be denied if it is "perfectly clear that [Nino] does not raise even a colorable claim." *Cassett*, 406 F.3d at 623-24. Nino provides no support for his claim that his guilty plea was involuntary. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994.) Accordingly, Nino is not entitled to relief as to this claim.

## V.   **CONCLUSION**

Having carefully considered Nino's Petition, Respondent's Answer and Memorandum of Points and Authorities in Support of the Answer and all the documents and legal authorities submitted by the parties, for all the foregoing reasons the Court **DENIES** petition. The Clerk of Court is directed to enter a judgment denying the petition with prejudice.

**IT IS SO ORDERED.**

DATED: September 2, 2009

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM McCURINE, JR.
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL